IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GILBERTO BANNISTER | : | |
| | : | |
| Plaintiff, | : | 2: 02-cv-08531 |
| | : | 2:02-cv-04047 |
| v. | : | |
| | : | |
| JOHN ASHCROFT, | : | |
| UNITED STATES ATTORNEY | : | |
| GENERAL, et al. | : | |
| Defendants. | : | |

## ORDER

AND NOW, upon consideration of Gilberto Bannister's Petition for Writ of Habeas Corpus Relief and the Government's response thereto, IT IS HEREBY ORDERED that said Petition is DISMISSED.

BY THE COURT:

_____
**J. CURTIS JOYNER, JUDGE**
*United States District Court*

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GILBERTO BANNISTER | : | |
| | : | |
| Plaintiff, | : | 2: 02-cv-08531 |
| | : | 2:02-cv-04047 |
| | : | |
| v. | : | |
| | : | |
| JOHN ASHCROFT, | : | |
| UNITED STATES ATTORNEY | : | |
| GENERAL, et al. | : | |
| Defendants. | : | |

**GOVERNMENT'S RESPONSE TO PETITION FOR WRIT OF HABEAS CORPUS RELIEF**

The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Sonya Fair Lawrence, Assistant United States Attorney for the District, on behalf of respondents, John Ashcroft, United States Attorney General, et al., hereby files a response to *pro se* Petitioner Gilberto Bannister's Petition for Writ of Habeas Corpus and moves the Court to dismiss the Petition with prejudice.

**I.    Introduction**

Bannister brings this Petition for Writ of Habeas Corpus Relief pursuant to 28 U.S.C. § 2241. He raises three issues in the petition: (1) the Immigration Judge erred in finding him removable pursuant to Immigration and Naturalization Act ("INA") Section 237; 8 U.S.C. §1227; (2) the Immigration Judge erred in determining that he was

2

ineligible for relief from removal under Section 240A(a) of the INA, 8 U.S.C. § 1229b(a); and (3) based upon his interpretation of the Third Circuit's ruling in Patel v. Zemski, 275 F.3d 299 ( 3d Cir. 2001), he is entitled to reasonable bond.[1]  A review of the record reveals that Mr. Bannister has not raised such claims on appeal to the Board of Immigration Appeals ( "BIA").  Therefore, he has not exhausted his administrative remedies as to the claims he now raises and the district court has no jurisdiction to address the claims on habeas review pursuant to 28 U.S.C. § 2241.  See INS v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271 (2001); 8 U.S.C. § 1252(d)(1).

Assuming *arguendo* that the district court has jurisdiction to address Mr. Bannister's claims, the arguments he raises in his petition for habeas relief lack merit. Therefore, the court must dismiss the habeas petition with prejudice.

## II.  Factual Background

Petitioner Gilberto Bannister, a.k.a. Gilbert B. Miller, Gilber Miller, and Gilbert Millere is a native and citizen of Panama who legally entered the United States at Miami, Florida on or about April 25, 1964. (Exhibit 1).  On October 10, 1997, a grand jury of the County of the Bronx, New York indicted Bannister for violating N.Y.P.L. 220.39, Section

---

[1] In his Petition for the Issuance of an Emergency Stay of Removal, filed on November 18, 2002, Mr. Bannister argues that he believes he is a United States citizen by derivation. He raised his claims of citizenship to the Immigration and Naturalization Service by filing an N-600 application on September 10, 2002. The Service denied Bannister's derivative citizenship application on November 15, 2002, finding that, in accordance with 8 U.S.C. § 1431, Bannister is not a derivative citizen because his mother naturalized before his eighteenth birthday. Although Bannister did not raise the derivative citizenship issue in his Petition for Habeas Corpus Relief, the government will address the issue, *infra*.

3

110, Attempted Criminal Sale of a Controlled Substance (Crack Cocaine) in the Third Degree. On December 18, 1998, Bannister pled guilty to Attempted Criminal Sale of a Controlled Substance and was convicted of the same on or about February 7, 2001. A judge of the Supreme Court of the State of New York entered a judgment of conviction in the matter and sentenced Mr. Bannister to a one-year term of imprisonment. (Exhibit 2).

On June 7, 2001, the Service issued a Notice to Appear in Removal Proceedings and served Bannister with such notice on September 25, 2001. (Exhibit 3). The Notice to Appear informed Bannister that the Service initiated removal proceedings against him pursuant to INA Section 237(a)(2)(A)(iii); 8 U.S.C.§ 1227(a)(2)(A)(iii), because he was convicted of an "aggravated felony" as defined in INA Section 101(a)(43)(B); 8 U.S.C. § 1101(a)(43)(B), and Section 237(a)(2)(B)(i); 8 U.S.C. § 1227(a)(2)(B)(i), because he was convicted of a crime related to a controlled substance. Id.

The Immigration and Naturalization Service then took Bannister into custody pending the outcome of removal proceedings. Although the Service initially denied bond in Bannister's case, it subsequently conducted bond redetermination proceedings on January 22, 2002, in response to the Third Circuit's ruling in Patel v. Zemski, 275 F.3d 299 (3d. Cir. 2001). During the bond redetermination proceedings, an Immigration Judge determined that Bannister presented a flight risk. Consequently, the Immigration Judge set bond at $7,500 to ensure Bannister's presence at future removal proceedings. (Exhibit 4).

On February 20, 2002, an Immigration Judge held Bannister's removal hearing. At the close of the hearing, the Immigration Judge ordered Bannister removed to Panama. (Exhibit 5). Although Mr. Bannister was represented by counsel during his removal proceedings, neither he nor his counsel appealed the removal order to the BIA. Thus, in accordance with 8 C.F.R. § 241.31, Bannister's order of removal became administratively final on March 20, 2002.

After his order of removal became administratively final, Bannister appealed the January 22, 2002 bond redetermination. On June 27, 2002, the BIA issued an dismissing the appeal as moot because it lacked jurisdiction to set bond conditions after the entry of an administratively final order of removal. (Exhibit 6).

On or around September 10, 2002, Mr. Bannister filed an application for Certificate of Citizenship, Form N-600, with the Service. (Exhibit 7). In his application Bannister sought to obtain derivative citizenship through the naturalization of his mother and stepfather. In reviewing Bannister's N-600 application, the Service determined that: (a) Bannister's biological parents never married; (b) his mother became a naturalized United States citizen on August 2, 1966, after Bannister reached his eighteenth birthday; (c) his biological father never became a United States citizen; and (d) although Bannister's stepfather may or may not have become a United States citizen, there is no provision in the law for derivation of citizenship from a stepparent. (Exhibit 8). Accordingly, the Service denied the N-600 application, finding that Bannister did not

derive United States citizenship at any time before the filing of his application.  Id.

Mr. Bannister remains in the Service's custody pending removal to Panama.  On November 18, 2002, Bannister filed a petition for Emergency Stay of Removal, attaching a petition for Writ of Habeas Corpus Relief (Civil Action No. 02-8531).  The Court granted the Emergency Stay of Removal on December 3, 2002.  Bannister apparently filed a separate habeas corpus petition under Civil Action No. 02-4047 on November 22, 2002.[2]  In the habeas petition contained within the pleadings in Civil Action No. 02-8531, Bannister raises three issues:  (1) the Immigration Judge erred in finding him removable pursuant to Section 237(a)(2) of the INA, 8 U.S.C. §1227(a)(2); (2) the Immigration Judge erred in determining that he was ineligible for relief from removal under Section 240A(a) of the INA, 8 U.S.C. § 1229b(a); and (3) based upon his interpretation of the court's ruling in Patel v. Zemski, 275 F.3d 299 (3d Cir. 2001), he must be released from custody pursuant to reasonable bond.

A review of the record reveals that Mr. Bannister has not raised such claims on appeal to the BIA.  Therefore, he has not exhausted his administrative remedies as to the claims he now raises and the district court has no jurisdiction to address the claims on

---

[2] According to the docket report of Civil Action No. 02-4047, Bannister filed a Petition for Habeas Corpus Relief on June 21, 2002, which was dismissed without prejudice on August 13, 2002.  (See Exhibit 9, page 2, docket entry 3).  The Court later granted Bannister permission to proceed In Forma Pauperis and ordered the Clerk of Court to serve a copy of the Petition upon the Respondent.  (Id. at docket entry 5).  Although Respondents have no record of receiving service of the petition in Civil Action No. 02-4047, the instant response presumably addresses the habeas petition filed in 02-4047.

habeas review. See <u>INS v. St. Cyr</u>, 533 U.S. 289, 121 S.Ct. 2271 (2001). Assuming *arguendo* that the district court has jurisdiction to address Mr. Bannister's claims, the arguments he raises in his petition for habeas relief lack merit. Therefore, the court must dismiss the habeas petition with prejudice.

**III.    Legal Argument**

    **A.    The District Court Lacks Subject Matter Jurisdiction to Review Bannister's Claims.**

In his petition for habeas corpus relief, Bannister argues that the Immigration Judge erred in finding that his conviction for Attempted Criminal Sale of a Controlled Substance in the Third degree rendered him deportable under Section 237(a)(2) of the INA. In addition, Bannister argues that he is eligible for relief from deportation pursuant to Section 240A(a) of the INA; therefore, the Immigration Judge's failure to so find warrants this Court's grant of his petition for habeas relief.

As an initial matter, Mr. Bannister did not timely raise such arguments on appeal to the BIA. Review of his immigration record reveals only one appeal to the BIA. The only appeal filed by Bannister relates to his challenge of the $7,500 bond requirement issued by an Immigration Judge prior to the entry of the final order of removal in his removal proceedings. Since Bannister never sought review of the Immigration Judge's order of removal and failure to either consider or grant Section 240A Cancellation of Removal, he cannot not invoke the jurisdiction of this Court to review such claims. 8 U.S.C. § 1252(d)(1).

The administrative record in this case provides no evidence of Bannister's application for cancellation of removal pursuant to Section 240A; 8 U.S.C. § 1229b. Therefore, not only did Bannister not file a timely appeal of the Immigration Judge's alleged adverse ruling regarding his application for cancellation of removal, it appears that he failed to even raise the issue during his Immigration hearing. Consequently, Bannister has failed to exhaust his administrative remedies on the cancellation of removal issue. Courts require exhaustion of administrative remedies to: (1) facilitate judicial review by the agency's development of a factual record; (2) save judicial time by allowing the agency to grant the relief sought; and (3) preserve administrative autonomy by allowing an agency to correct its own errors. See Arias v. U.S. Parol Comm'n, 648 F.2d 196, 199 (3d Cir. 1981). In the instant case, Bannister's failure to present the issue of cancellation of removal to the Immigration Judge and the BIA defeats all of the purposes of the exhaustion requirement. Thus, his habeas claim, as it relates to relief pursuant to Section 240A must be dismissed for failure to exhaust administrative remedies. " 8 U.S.C. § 1252(d)(1).

Likewise, Bannister did not file a timely appeal of his order of removal with the BIA. Thus, he cannot now raise those claims before the district court. See Taniguchi v. Schultz, 303 F.3d 950, 956 (9th Cir. 2002)(finding that "a court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right . . . ).

Furthermore, this Court lacks jurisdiction to address the arguments Bannister raises in his petition for habeas relief because he neither presents a question of law nor raises a constitutional challenge related to the final order of removal or denial of discretionary relief therefrom. *See* INS v. St. Cyr, 533 U.S. 289, 297-298 (2001). In addition, Bannister does not raise pure questions of law or constitutional challenges to the application of the relevant statutes in his case. The instant habeas petition simply disputes the facts upon which the Immigration Judge based his decision to order Bannister removed to Panama. Consequently, this court lacks subject matter jurisdiction to hear such claims and the petition for habeas corpus relief must be dismissed. See Sol v. I.N.S., 274 F.3d 648, 651 (2d Cir.2001)(finding that a petition for habeas corpus may be used to challenge incarceration or orders of deportation as violations of the Constitution or laws or treaties of the United States but must not be used to challenge factual determination of the Immigration Judge).

**B.   Bannister is an Aggravated Felon and is Therefore Removable from the United States.**

Section 237 of the INA identifies general classes of aliens admitted to the United States who are deportable because of activities in which they engaged after admission. Section 237(a)(2)(A)(iii), codified at 8 U.S.C.§ 1227(a)(2)(A)(iii), renders deportable any alien who has been convicted of an "aggravated felony" as defined in Section 101(a)(43)(B); 8 U.S.C.§ 1101(a)(43)(B).  Section 101(a)(43)(B); 8

U.S.C.§1101(a)(43)(B) defines an "aggravated felony" as an offense relating to the illicit trafficking in a controlled substance, as described in Section 102 of the Controlled Substance Act, including a drug trafficking crime, as defined in 18 U.S.C. § 924(c). Conspiracy to commit an aggravated felony is also an aggravated felony under the INA. See Section 101(a)(43)(U); 8 U.S.C.§ 1101(a)(43)(U). In turn, 18 U.S.C. § 924(c) defines a "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . "[3]

Bannister pleaded guilty to Attempted Criminal Sale of a Controlled Substance in the Third Degree (Crack Cocaine) in violation of N.Y.P.L. Section 110/220.39. After being convicted of the felony offense, Bannister was sentenced to one year imprisonment. Such an offense is a drug trafficking crime punishable as a felony under the Controlled Substances Act. See 21 U.S.C. § 801 et seq. Since Bannister was convicted of a felony drug trafficking crime, he was convicted of an "aggravated felony, "as the term is defined in Section 101(a)(43)(B). Thus, the Immigration Judge correctly determined that he was removable under Section 237(a)(2)(A)(iii). See Manzueta v. Ashcroft, 206 F.Supp.2d 386, 388 ( W.D.N.Y. 2001)(finding that a conviction for selling cocaine, in violation of New York Penal Law § 220.39, Criminal Sale of a Controlled Substance in the Third Degree, constitutes a drug trafficking crime within the meaning of 18 U.S.C. § 924(c)).

---

[3] Section 102 of the Controlled Substances Act, 21 U.S.C. § 802, defines a controlled substance as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter." 21 U.S.C. § 802(6). Cocaine is designated as a Schedule II controlled substance in the Controlled Substances Act. 21 U.S.C. § 812(c).

Likewise, Bannister's drug trafficking conviction also renders him removable under INA Section 237(a)(2)(B)(i). Section 237(a)(2)(B)(i) renders removable "any admitted alien convicted of a violation of (or conspiracy or attempt to violate) any law or regulation . . . of the United States . . . relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act, 21 U.S.C. § 802), other than a single offense involving possession for one's own use of 30 grams or less of marijuana." Section 237 (a)(2)(B)(i); 8 U.S.C. § 1227 (a)(2)(B)(i). Bannister was convicted of possession of crack cocaine; therefore, he is not eligible for the exception set forth in Section 237(a)(2)(b)(i). Bannister is removable under Section 237(a)(2)(B)(i) and the Immigration Judge did not err in so finding.

**C.    Bannister is Ineligible for Relief from Removal under Section 240A of the INA.**

Bannister claims that even if he is removable pursuant to Section 237(a)(2) of the INA, he still may not be deported because he is eligible for Cancellation of Removal under Section 240A of the INA. However, Bannister did not seek relief from deportation pursuant to Section 240A of the INA; 8 U.S.C. § 1229b, during his immigration hearing.[4] Therefore, he cannot now seek such relief in the district court. Even if Bannister did request such relief during his removal proceedings, such relief is unavailable to him because he is a legal permanent resident convicted of an "aggravated felony." See INA

---

[4] The Order of the Immigration Judge, dated February 20, 2002, makes no reference to Bannister's application for any form of relief from removal. (Exhibit 5).

Section 240A(a); 8 U.S.C. § 1229b(a)(3).

Section 240A(a) sets forth criteria under which a legal permanent resident may obtain cancellation of removal. If the legal permanent resident has been convicted of an "aggravated felony," however, he cannot obtain cancellation of removal. See Section 240A(a)(3); 8 U.S.C. § 1229b(a)(3). Since Bannister was convicted of an "aggravated felony," as the term is defined in Sections 101(a)(43)(B) and 101(a)(43)(U), he is ineligible for cancellation of removal. See Valdivia v. INS., 80 F.Supp.2d 326, 327(D.N.J. 2000)(finding legal permanent resident convicted of an aggravated felony statutorily ineligible for cancellation of removal under Section 240A(a) of the INA).

**D.     Patel v. Zemski is inapplicable in the instant case.**

Bannister apparently argues that he is entitled to reasonable bond and relies upon the Third Circuit's holding in Patel v. Zemski, 275 F.3d 299 (3d. Cir. 2001) to conclude that he is entitled to habeas relief. Although not directly stated in his habeas petition, it appears that Bannister may be arguing that Section 236(c), as applied to him, is unconstitutional.

Section 236(c) of the INA; 8 U.S.C. § 1226, mandates that:

> the Attorney General take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title . . . when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c).

In response to the Third Circuit's decision in <u>Patel</u>, an Immigration Judge issued a Bond Redetermination Memorandum. (Exhibit 4). The Immigration Judge evaluated the circumstances of Bannister's pre-removal order detention and issued an Order setting bond at $7,500. In setting bond at $7,500, the Immigration Judge evaluated the circumstances related to Bannister's criminal history, community ties, and other factors related to risk of flight. In so evaluating, the Immigration Judge concluded that Bannister presented a flight risk and set bond accordingly. Bannister received an opportunity to establish that he is not a flight risk or a danger to the community prior to the entry of the final order of removal in his case. Thus, the requirements set forth in <u>Patel</u> have been satisfied.

At this stage of Bannister's removal proceedings, however, whether the Immigration Judge followed <u>Patel</u> is a moot point. Once a final order of removal issues, Section 236(c) and <u>Patel's</u> application of the statute no longer applies. The Third Circuit in <u>Patel</u> found that "[m]andatory detention of aliens after they have been found subject to removal but *who have not yet been ordered removed* because they are pursuing their administrative remedies violates their due process rights . . ." <u>Patel v. Zemski</u>, 275 F.3d 299, 314 (3d Cir.2001)(*emphasis added).* Bannister's order of removal became administratively final on March 20, 2002. Therefore, the Third Circuit's ruling in <u>Patel</u> is inapplicable here. See <u>Hamlet v. I.N.S.</u>, 2002 WL 1958799, *2 ( E.D.Pa.Aug 26, 2002)(finding that <u>Patel</u> is inapplicable to aliens who are in detention after a final removal

order has been entered).

Detention of aliens under a final order of removal is governed by INA Section 241; 8 U.S.C. § 1231. Under INA Section 241, the Service has 90 days (the "removal period") to carry out an order of removal. 8 U.S.C. §1231(a)(1)(A). The removal period starts at the latest of three points: the date the order becomes administratively final; the date of any reviewing court's final order; or the date the alien is released from criminal confinement. See 8 U.S.C. § 1231(a)(1)(B)(i)-(iii). Detention is mandatory during the removal period. 8 U.S.C. §1231(a)(2).

In Bannister's case, the Immigration Judge entered a final order of removal on February 20, 2002. Once the thirty-day appeal period expired on March 20, 2002, the removal order became administratively final and the Service could then lawfully remove him to Panama.

Cases involving the detention of aliens under a final order of removal are governed by the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491 (2001). In Zadvydas, the Supreme Court held that the 90-day statutory removal period and detention for an alien in deportation proceedings may be extended by the Attorney General for up to six months if necessary. Id. at 701, 121 S.Ct. at 2505. Indeed, the Court did not even limit the removal period to a maximum of six months. Rather, as the Court stated: "[t]his 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in

confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." Id. Although the presumptively reasonable six-month period of detention in this case expired in September 2002, Bannister is not entitled to automatic release. Following the 90-day removal period, the INA provides that an alien may be detained at the discretion of the Attorney General. 8 U.S.C. § 1231(a)(1)(c), (a)(2), and (a)(3). The regulations pertaining to this section of the INA further state:

> The district director may continue in custody any alien . . . removable under [8 U.S.C. §] 1227(a)(2) . . . or who presents a significant risk of noncompliance with the order of removal, beyond the removal period, as necessary, until removal from the United States. If such an alien demonstrates by clear and convincing evidence that the release would not pose a danger to the community or a significant flight risk, the district director may, in the exercise of discretion, order the alien released from custody on such conditions as the district director may prescribe, including bond in an amount sufficient to ensure the alien's appearance for removal.

8 C.F.R. § 241.4(a). In addition, 8 U.S.C. § 1231(a)(1)(c) extends the removal period beyond a period of 90 days if the alien acts to prevent his removal or fails to cooperate with the Service's attempts to repatriate him.

In the instant case, Mr. Bannister has taken steps to prevent his removal through the filing of petitions for habeas corpus relief and a motion for stay of removal. Since the Service is unable to remove him at this time, due to a Stay of Removal issued by the

15

Court on December 3, 2002, Bannister cannot now successfully argue that his continued detention fails to comport with the detention requirements of Zadvydas.  See Atkinson v. I.N.S., 2002 WL 1378206, *2( E.D.Pa.Jun 25, 2002); see also Copes v. McElroy, 2001 WL 830673, *6 (S.D.N.Y. July 23, 2001); Lawrence v. Reno, 2001 WL 812242, *1 (S.D.N.Y. July 18, 2001).

Moreover, in accordance with Section 241.4, Bannister is entitled to periodic custody reviews to determine the appropriateness of his detention. A file custody review is scheduled to occur this month.[5] In addition to conducting a custody review, the Service is awaiting receipt of travel documents from the Panamanian government and believes that it will obtain such documents in the reasonably foreseeable future.

Bannister's detention comports with the Supreme Court's decision in Zadvydas and cannot form the basis for a grant of habeas relief in this case.

---

[5] The custody review, which was originally scheduled for December 30, 2002, was rescheduled to allow the Service to adjudicate Mr. Bannister's N-600 application. Since the N-600 application was denied, Bannister's custody review has been rescheduled for January 2003.

**IV.    CONCLUSION**

For all of the reasons stated above, the petition for habeas corpus relief must be denied.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney

_____

VIRGINIA A. GIBSON
Assistant United States Attorney
Chief, Civil Division

Dated: January    , 2003                        _____
SONYA F. LAWRENCE
Assistant United States Attorney
Suite 1250, 615 Chestnut Street
(215) 861 - 8921
(215) 861 - 8349 (telecopier)

**CERTIFICATE OF SERVICE**

    I hereby certify that on the _____ day of January 2003, I caused a true and correct copy of the foregoing Government's Response to the Petition for Habeas Corpus to be served by first-class United States mail, postage prepaid, upon the following:

>Mr. Gilberto Bannister
>A-13-856-385
>Berks County Prison
>1287 County Welfare Road
>Leesport, PA 19533-9397

>Pro Se

>_____
>Sonya F. Lawrence